The People of the State of Illinois, Defendant in Error, vs. John Fahrner, Plaintiff in Error.

*Opinion filed June 23, 1928.*

1. Criminal law—*when statement against interest is admissible.* The fact that the evidence does not show that the defendant was warned that his statement against interest might be used against him does not render the statement incompetent, where, so far as the record shows, no promises or threats were made; and the statement may be admitted although there has been no hearing as to its voluntary character, where no effort is made at the trial to exclude the statement on that ground or to have such hearing as to its competency.

2. Same—*jury may be instructed to consider statements against interest, the same as other testimony.* The jury may be instructed that it is their duty to consider any statements proved to have been made by the defendant precisely as any other testimony, and such instruction is not subject to the objection that it leaves the jury to determine the competency or admissibility of the statements, where no objection to their competency is urged before the court; but an instruction that "verbal admissions should be received with caution and are sometimes the most unreliable of all evidence" may be refused, as indicating to the jury the court's opinion of the weight and credit which should be given to verbal admissions.

3. Same—*what instruction as to credibility of defendants' denial may be refused.* It is proper to refuse an instruction stating that "if the evidence in this case shows that the defendants testified positively that they did not commit the act alleged in the indictment, it is not negative evidence and such testimony, if any, is as much entitled to weight as the affirmative testimony of others, or the testimony of affirmative facts and circumstances," as such instruction is argumentative, calls attention to the testimony of certain witnesses, and invades the province of the jury by instructing them as to the weight to be given such testimony.

Writ of Error to the Circuit Court of Kane county; the Hon. John K. Newhall, Judge, presiding.

McCarthy & McCarthy, (Frank A. McCarthy, and Theodore N. Schnell, of counsel,) for plaintiff in error.

OSCAR E. CARLSTROM, Attorney General, CHARLES L. ABBOTT, State's Attorney, and ROY R. PHILLIPS, for the People.

Mr. JUSTICE STONE delivered the opinion of the court:

Plaintiff in error, John Fahrner, was indicted in the circuit court of Kane county, with James Kelly, for robbery while armed with a gun. A trial was had and both defendants were convicted. On separate motions for a new trial the motion was allowed as to Kelly and overruled as to plaintiff in error. He brings the cause here for review, contending that the court erred in the admission of testimony and in instructing the jury and that the competent evidence does not support the verdict of guilt.

It appears from the evidence that about 9:15 P. M. on June 5, 1926, three men driving a Chrysler sedan automobile stopped at a filling station at the corner of Villa and St. Charles streets, in the city of Elgin, and called for a can of cup grease. Randolph Parks, who was in charge of the filling station, produced a can of grease, and one of the men got out of the car and asked Parks for a smaller can. Parks went back into the oil room to procure a smaller can, and the man who had gotten out of the car followed him in, grasped his arm, and, pointing a gun at him, ordered him to open the safe and give him the money. Parks gave the man holding the gun a box from the safe containing the silver and paper money. This box was handed out of the door to one of the other men. The paper money was then handed to the first man, who put it in his pocket. Parks was robbed of $315 or $325, the money of the oil company in his possession. He was then ordered into the basement, the basement door was shut and the car drove away. Parks then came up and called the police. It appears that later that evening John West, a motorcycle policeman in the village of Melrose Park, lying about twenty-

five miles east of Elgin, saw a Chrysler sedan speeding through Melrose Park. He pursued and overtook it. On his demand it stopped, and a man who he testified resembled James Kelly got out of the car. While in conversation with him this man took the officer's pistol out of his holster and struck him over the head with it, knocking him to his knees, and the car sped away. West then went to the police station, got another gun and commenced a search for the car. He found a Chrysler car about one-half mile east of the point where he had stopped a Chrysler car that evening. It apparently had run over the corner of the curbing and into a ditch and was wrecked. He took the number of this car and found that it belonged to a Drive It Yourself Company in Chicago operated by a man by the name of Samuel Kellar.

Officer Bernard E. Riley, a police officer of the city of Chicago, testified that on September 22, 1926, he visited plaintiff in error in the Bridewell Hospital, in Chicago. He found him suffering from a number of gunshot wounds and questioned him about some trouble in Chicago. He asked plaintiff in error if he would make a statement of his trouble, and he did. He then asked him if he had been in any other trouble, and plaintiff in error told him that he and James Kelly and another person whose first name was George held up an oil station in Elgin and on their way back were stopped by officer West in Melrose Park, and that Kelly took West's gun away from him and assaulted him; that in getting away they turned a corner too quickly and ran into and over the curb and into a ditch and wrecked the car; that they separated and later divided the proceeds at a meeting in Chicago. Riley also testified that on October 15 following, plaintiff in error stated to him and officers Edward Touhy and Thomas Carmody that he, Kelly. and another man committed the robbery of the oil station at Elgin; that he remained at the wheel and the third man went inside and got the money, which they afterwards divided in Chicago. Riley testified that he again talked with

plaintiff in error on October 22, 1926, and that at that time plaintiff in error denied he had made such statements; that at the time he talked with plaintiff in error at the Bridewell Hospital the latter was conscious; that he was suffering from gunshot wounds in his head and arm; that witness inquired concerning his condition and was told by an interne that he would not die. Riley is corroborated by the testimony of West, who was present during the conversation between Riley and plaintiff in error at the hospital on September 22, having been called there by Riley. The testimony of Riley concerning statements made by plaintiff in error on October 15 is corroborated by officers Touhy and Carmody.

Samuel Kellar testified that he operated a Drive It Yourself automobile company in Chicago, and that on June 5, 1926, at about four o'clock P. M., he rented to plaintiff in error a Chrysler sedan; that the next morning he was called from Melrose Park and told the car was wrecked; that he sent for the car and brought it in. This witness identified plaintiff in error as the man who rented the car. He testified that plaintiff in error gave him a check for $15 as a deposit, which check was returned stamped "No Account," and that after plaintiff in error's arrest his attorney made settlement of the check with Kellar.

Plaintiff in error took the stand and denied that he knew anything about the statements made to the officers and denied that he had anything to do with the robbery. He testified that while at the Bridewell Hospital he was unconscious for two or three days. He also denied having rented the car from Kellar. Aside from the testimony of Kelly there is no corroboration whatever of his testimony. On the other hand, that the statements were made to the officers as testified to by them is shown by other evidence. Kellar's testimony that plaintiff in error was the one who rented the Chrysler sedan from him corroborates the testimony of the witness Parks that a Chrysler sedan was used, and the in-

cident in Melrose Park in which officer West was assaulted coincides with the statement which the People's witnesses say was made by plaintiff in error. That he was engaged in this robbery is also indicated by the testimony of Kellar that plaintiff in error procured the rental of the Chrysler sedan car from him which was later found wrecked. The jury were justified in returning a verdict of guilty.

Counsel for plaintiff in error urge that the statement, which they call a confession, of plaintiff in error was not shown to be voluntary and testimony concerning it was therefore incompetent. No effort was made on the trial to exclude the statement on such ground or to have a hearing on the question of its competency before the court. Both officers West and Riley testified that at the time the statement was made at the Bridewell Hospital plaintiff in error was conscious. No physician or nurse of that hospital was called to contradict this statement or show any other condition. On October 15, 1926, while at the police station, plaintiff in error made the same statement to officers Riley, Touhy and Carmody. The record shows that no promises were made to him or threats. The evidence does not show that he was warned that his statement might be used against him. This fact, however, does not render evidence of the statement incompetent. *People* v. *Fox,* 319 Ill. 606; *People* v. *Knox,* 302 id. 471; *Marzen* v. *People,* 173 id. 43.

Plaintiff in error argues that the court erred in giving certain instructions and in refusing others. Instructions 3 and 5 objected to were on reasonable doubt. This court has frequently criticised giving extended instructions on the term "reasonable doubt." In this case the court gave two instructions on reasonable doubt on behalf of the People and one on behalf of plaintiff in error. The giving of these instructions is not sufficiently erroneous in this case to require reversal of the judgment.

Instruction 8 given for the People is also complained of. This, in substance, told the jury, as a matter of law, that

it was their duty to consider any statements proved to have been made by either of the defendants precisely as any other testimony. It is objected that this instruction submits to the jury the competency of the confession. This is a misapprehension of the purport of the instruction. It does not treat of confessions but of statements made by plaintiff in error in the nature of statements against interest. The competency or admissibility of the statements was not left to the jury. The question of their competency is a matter with which the jury has nothing to do. No objection on that ground was urged before the court. No prejudice could arise against plaintiff in error by reason of the instruction. This instruction has been approved. *People v. Guido,* 321 Ill. 397.

Plaintiff in error complains that the court refused to give instruction 7 offered on his behalf. This instruction told the jury that "if the evidence in this case shows that the defendants testified positively that they did not commit the act alleged in the indictment, it is not negative evidence and such testimony, if any, is as much entitled to weight as the affirmative testimony of others, or the testimony of affirmative facts and circumstances." The instruction was argumentative and called attention to the testimony of certain witnesses. It was also objectionable because it invaded the province of the jury by instructing them as to the weight to be given the testimony of certain witnesses. It was not error to refuse to give it.

It is also complained that the court erred in refusing to give plaintiff in error's instruction 2. This instruction is as follows:

"The court instructs the jury that verbal admissions should be received with caution and are sometimes the most unreliable of all evidence and the jury should carefully consider all the evidence and circumstances proved in the case in determining the weight to be given to such admissions."

This instruction was objectionable in that it indicates to the jury the weight and credit which should be given to verbal admissions. This is the province of the jury. It was also open to the objection that it might readily be understood by the jury as an opinion of the court concerning the credibility of the evidence of plaintiff in error. The instruction was properly refused.

The instructions are to be taken as a series. So considered we are satisfied that the jury were properly instructed.

There being no error in the record the judgment is affirmed.

*Judgment affirmed.*